## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DE'ANDRE MCKYE INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22CV216 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff De'Andre McKye Ingram brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income as both a child and an adult. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff, through his mother, filed an application for child supplemental security income in 2019, alleging a disability onset date as of October 13, 2002, later amended to March 14, 2019. (Tr. 107, 142, 451-59.) Plaintiff had not attained the age of eighteen at the time he filed his application, but he did attain the age of eighteen during its pendency. (Tr. 112 (observing that Plaintiff turned eighteen in October of 2020).) The application was denied initially and upon reconsideration. (Tr. 378-81, 383-91.) After a hearing, the ALJ determined on May 28, 2021, that Plaintiff was not disabled under the Act as either a child or an adult. (Tr. 107-73.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (Tr. 1-7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ analyzed Plaintiff's claim both as a minor and as an adult. A child under the age of eighteen qualifies as disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. The ALJ must follow a three-step sequential evaluation process to consider whether the child in question (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

A child meets a listing if the specific findings detailed within the description of a listing

2

exist with respect to that child's diagnosis. 20 C.F.R. §416.925(d). A child medically equals a

listing if the medical findings with respect to the child's impairment are at least equal in severity

and duration to the listed findings. 20 C.F.R. § 416.926(a). To determine if a child's impairment

is functionally equivalent to a listed impairment, the ALJ considers how the child functions in

six domains: (1) acquiring and using information, (2) attending and completing tasks, (3)

interacting and relating with others, (4) moving about and manipulating objects, (5) caring for

oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child functionally

equals a listing if he has a severe impairment resulting in "marked" limitations in two domains

of functioning or an "extreme" limitation in one domain.[1] 20 C.F.R. § 416.926a(a).  For each

domain, the regulations provide descriptions of relevant skills and their applications for

various age groups, *e.g.*, preschool children, school-age children, and adolescents, as well as

examples of limited functioning within each domain. *See* 20 C.F.R. § 416.926a(g)-(l).

The ALJ therefore followed the three-step process to determine whether an individual

under the age of eighteen is disabled.  20 C.F.R. § 416.924.   At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since the date of application, March 14,

2019.  (Tr. 112.)  At step two, the ALJ found that prior to turning eighteen, Plaintiff had the

---

[1] A child has a "marked" limitation in a domain when the impairment "interferes seriously
with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).
A marked limitation "is more than moderate but less than extreme. It is the equivalent of the
functioning we would expect to find on standardized testing with scores that are at least two, but less
than three, standard deviations below the mean." *Id.* (internal quotations omitted). A child has an
"extreme" limitation in a domain if her impairment interferes "very seriously" with her ability to
independently initiate, sustain, or complete activities, and is the equivalent of functioning that would
be expected on standardized testing with scores that are at least three standard deviations below the
mean. 20 C.F.R. § 416.926a(e)(3).

3

following severe impairments: attention deficit hyperactivity disorder ("ADHD"); learning disorder; epilepsy; asthma; and Gaucher's disease.[2]  (Tr. 112.)  At step three, the ALJ found that prior to turning eighteen, Plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the listings.  (Tr. 112, 114.)  In evaluating whether Plaintiff's impairments functionally equaled a listing, the ALJ found marked limitations in health and physical well-being, no limitation in the ability to care for himself and in interacting and relating with others, and less than marked limitations in the remaining categories.  (Tr. 118-24.)  As such, the ALJ concluded that Plaintiff was not disabled prior to turning eighteen.  (Tr. 124.)

Next, the ALJ ascertained whether the claimant was disabled as an adult, as set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).  To do this, "[t]he Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of

---

[2] *See R.S. v. Sec'y of Health & Hum. Servs.*, No. 15-1207V, 2019 WL 7631017, at *17 n.23 (Fed. Cl. Dec. 19, 2019) (defining Gaucher's disease as "as an inborn error of metabolism where patients are deficient in a particular enzyme").

4

production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

As noted, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of application, March 14, 2019. (Tr. 112.) The ALJ next determined that Plaintiff had not developed any new impairment or impairments since turning eighteen, but that he continued to have the previously mentioned severe impairments. (Tr. 124.) The ALJ also determined that since turning eighteen, Plaintiff did not meet an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 124.) The ALJ then determined that since turning eighteen, Plaintiff had the residual functional capacity ("RFC") to perform medium work

> except [that he] can understand, remember and carry out short, simple instructions; can interact appropriately with the general public, supervisors, co-workers, or peers frequently during an 8-hour workday; can respond appropriately to changes in the work setting frequently during an 8-hour workday; can maintain attention and concentration to stay on task for 2 hour periods over the course of an 8-hour workday; time off task during the workday can be accommodated by normal breaks; can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; and can deal with problems involving a few concrete variables in or from standardized situations.

(Tr. 128.) At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (Tr. 130.) At step five, the ALJ determined that since turning eighteen, there were jobs which

Plaintiff could perform consistent with his RFC, age, education, and work experience. (Tr. 131.) Consequently, Plaintiff was not disabled under the Act. (Tr. 132.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises a general objection, along with two more specific objections. Plaintiff's general objection is that "[t]he ALJ's failure to identify and explain how she considered all the relevant evidence, especially probative evidence that contradicted her own Step 3 and RFC conclusions, in the decision is harmful error that prevents meaningful review of the decision. It also prevents the ALJ's decision from being supported by substantial evidence." (Docket Entry 28 at 7.) More specifically, Plaintiff contends that "[t]he ALJ failed to consider the evidence of record regarding [Plaintiff's] difficulty with timely task completion, that contradicts her conclusions, when assessing his limitations under the criteria of listings 112.05B(c) and 12.05B(c) and/or the domain of Attending and Completing Tasks at 20 C.F.R. § 416.926a(h) and SSR 09-04p." (*Id.* at 8.) Plaintiff next objects that "[t]he ALJ's failure to consider the probative evidence regarding [Plaintiff's] impaired physical functioning secondary to his Gaucher's disease when assessing his abilities under 20 C.F.R. § 416.926a(j), SSR 09-06p and the RFC is error." (*Id.* at 15.) As explained below, these objections have no merit.[3]

---

[3] The undersigned has reordered and addressed Plaintiff's objections in a logical manner designed to promote both judicial economy and clarity of analysis.

## A. Listing 112.05B

First, Plaintiff contends that the ALJ's listing 112.05B assessment is not supported by substantial evidence. (Docket Entry 28 at 9.) This objection is not persuasive.

More specifically, listing 112.05 addresses intellectual disability in children. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.05. To meet listing 112.05B, Plaintiff must have "[s]ignificantly subaverage general intellectual functioning" and "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 112.05B (2)(a)-(d). Listing 112.05(B)(1)(b) also requires in the first part that the "[s]ignificantly subaverage general intellectual functioning [be] evidenced by" . . . "b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administrated standardized test of generalized intelligence." *Id.* § 112.05B (1)(b).

The ALJ in this case addressed listing 112.05 as follows:

> Prior to attaining age 18, the claimant's intellectual disorder fell short of meeting section 112.05, as he did not have significant deficits in adaptive functioning manifested by dependence upon others for his personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence. He also did not have significant subaverage general intellectual functioning with either a full scale IQ score of 70 or below or a full scale IQ score of 71 to 75 accompanied by a verbal or performance IQ score of 70 or below along with significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1) Understanding, remember or apply

7

information; 2) Interact with others; 3) Concentrate, persist or maintain pace; or 4) Adapt or manage oneself. The claimant's full scale IQ score was 71 (Exhibit 5F), and the undersigned finds he has had only one marked limitation in mental functioning (in adapting and managing himself) and no extreme limitations. The undersigned finds only moderate limitations in understanding, remembering and applying information, moderate limitations in concentration, persistence and pace, and no limitations in interacting with others. As will be discussed in more detail below, the claimant does have a learning disorder, but he is also able to understand and follow instructions, per Exhibit 5F, and he is able to perform simple tasks such as preparing easy meals, taking out the trash, cleaning his room, playing basketball, playing video games, and even working parttime on several occasions. He has a history of ADHD but had no trouble sustaining attention during a consultative psychological evaluation with testing. He has friends and has had no trouble interacting with treating and examining physicians or testifying during his hearing. He has had some trouble adapting due to his learning disorder, but he is able to adapt and manage himself well enough to interact with treating and examining physicians, testify during his hearing, go to the grocery store with his mom, and even work a few part-time jobs. He has also required no formal mental health treatment and has required no emergency room treatment or inpatient hospitalization due to any psychiatric issues.

(Tr. 113.)

In light of this, Plaintiff argues that although his full-scale IQ score was 71, the ALJ failed to consider that his processing speed score was only 65, which he contends would have satisfied the 112.05 intellectual disorders listing criteria if the ALJ had found two marked limitations in the areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself). (Docket Entry 28 at 9; Tr. 725.) Plaintiff argues further that in addition to finding that he had a marked limitation in adapting and managing himself, the

ALJ should have also found a second marked limitation in concentrating, persisting and maintaining pace, which would have then satisfied the listing criteria. (Docket Entry 28 at 9.) Plaintiff argues that while he may have been able to concentrate during the psychological consultative examiner's evaluation (*id.* at 11 (referencing Tr. 724)), he cannot persist or maintain pace to complete tasks in a timely manner (*id.* at 9-12). He claims he moves too slowly, cannot prepare dinner, burns food when cooking it, forgets chores, requires frequent reminders, is sleepy and fatigued from seizure medication, and points to his IEP, which allowed more time to complete tests, quizzes, and classwork. (Docket Entry at 9-11.) For the following reasons, these arguments are unpersuasive and the ALJ adequately demonstrated why Plaintiff did not meet, medically equal, or functionally equal listing 112.05B.

### i. Plaintiff did not meet or equal listing 112.05B.

First, as explained, to find that Plaintiff met or equaled listing 112.05B, the ALJ was required to find an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.05B (2)(a)-(d). Here, the ALJ found only one marked limitation: Plaintiff's ability to adapt or manage himself. (Tr. 113.) Nevertheless, Plaintiff asserts that the ALJ should also have found a marked limitation in his

9

ability to concentrate, persist, or maintain pace.[4] For the following reasons, this is not a persuasive contention.

More specifically, the ALJ here adequately explained why Plaintiff had less than a marked limitation in the "[c]oncentrate, persist, or maintain pace" domain. (Tr. 113.) For example, the ALJ considered Plaintiff's ability to understand and follow instructions during the consultative examination, despite his history of ADHD. (Tr. 113, 724.) The consultative examination, which occurred in August of 2019 (around five months after the alleged amended onset date) when Plaintiff was sixteen, indicated that "[d]uring testing, he was able to understand and follow instructions, and he was able to sustain attention to complete tasks." (Tr. 724.) Nor did the non-examining state agency doctors conclude that Plaintiff met listing 112.05B. (Tr. 353-55, 367-69.) Furthermore, the ALJ pointed to Plaintiff's ability to perform simple tasks such as preparing easy meals (Tr. 724 ("[H]e is able to cook simple things such as eggs and soups.")), taking out the trash when asked (Tr. 163-164), cleaning his room when asked (Tr. 163- 164, 724), playing basketball (Tr. 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599), playing video games (Tr. 724, 1599), and even working part-time (Tr. 158). The ALJ did not misrepresent or ignore qualifying statements about this evidence,[5] and she weighed,

---

[4] The ALJ did not ignore the processing score. She explained that Plaintiff did not meet the listing criteria as he did not have a "full scale IQ score of 71 to 75 *accompanied by* a verbal or performance IQ score of 70 or below along with significant deficits in adaptive functioning manifested by extreme limitation of one, or *marked limitation of two*" of the four areas of mental functioning. (Tr. 113) (emphasis added).

[5] Plaintiff asserts that the ALJ "ignores the qualifying statements and evidence regarding these activities." (Docket Entry 28 at 9.) "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Plaintiff's argument is unpersuasive. First, the ALJ here did not rely

10

and where necessary reconciled, all the evidence to reach the conclusion that Plaintiff did not have a marked limitation in this domain and thus did not meet or equal the listing.

### ii. Plaintiff did not functionally equal listing 112.05B.

As noted, to determine if a child's impairment is functionally equivalent to a listed impairment, the ALJ considers how the child functions in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). As further noted earlier, the ALJ here concluded that Plaintiff was only markedly impaired in a single domain, health and physical well-being. (Tr.

_____

*solely* on Plaintiff's daily activities, but rather as one part of an overall well-supported analysis. Second, the ALJ explicitly mentioned many qualifying statements and relevant evidence. For example, the ALJ noted Plaintiff's hearing testimony regarding his IEP, his assertion he was a slow learner, and that he was given extra time on tests. (Tr. 115.) The ALJ also mentioned Plaintiff's asserted sleepiness. (Tr. 115.) The ALJ referenced Plaintiff's testimony regarding his balance issues, that he does "some" cleaning, and that he does not cook big meals. (Tr. 115.) The ALJ also mentioned the testimony of Plaintiff's mother than Plaintiff had an IEP, was a slower learner who received extra help and extra time in classes, that he struggled with online education during the pandemic, that he lost his part-time job at MacDonald's because he moved too slow, that he sometimes forgets his chores, that he cannot cook a complete meal and sometimes burns food, and that his medication make him sleepy. (Tr. 115.) Nevertheless, the ALJ partially discounted a number of these statements in light of the evidence discussed in this Recommendation. Third, the ALJ considered all of Plaintiff subjective complaints along with the entire record. (Tr. 112 ("After careful consideration of the entire record"), 116 ("After considering the evidence of record"), 117, 128 ("the undersigned has considered all symptoms").) *See Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence"). Fourth, Plaintiff's ability to engage in his daily activities, even on a limited basis, provides support for the ALJ's decision, along with the medical and opinion and other evidence discussed by the ALJ. Fifth, it is clear from the ALJ's decision that she was not entirely persuaded by the qualifying statements of Plaintiff or his mother, particularly in light of the record described in detail above. In light of all of this, the ALJ did not materially err at any point in the decision in assessing Plaintiff's subjective complaints, the medical record, or Plaintiff's activities of daily living. *See Woody v. Kijakazi*, No. 1:20CV918, 2022 WL 37025, at *7 (M.D.N.C. Jan. 4, 2022). In short, the ALJ fairly weighed the conflicting evidence and determined which testimonial statements most harmonized with the record evidence.

11

123-124.) Plaintiff now contends that the ALJ erred in his assessment of two other domains, that of attending and completing tasks and that of moving and manipulating objects. (Docket Entry 28 at 8, 12-13, 17-18.)

The first of these domains, attending and completing tasks, considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. (Tr. 119-120; 20 C.F.R. § 416.926a(h).) The ALJ concluded that Plaintiff had a less than marked limitation in this domain. (Tr. 120.) This finding was supported by substantial evidence: Plaintiff had not taken any medication for ADHD in three years (Tr. 724) and was getting no formal mental health treatment, he was able to sustain attention to complete tasks during the consultative examination (Tr. 724),[6] and he played basketball and

---

[6] In challenging the ALJ's assessment of the domain of attending and completing tasks, Plaintiff again contends that the ALJ did not take into consideration qualifying evidence. (Docket Entry 28 at 12-14.) In support, Plaintiff references Social Security Ruling 09-04p, which provides that "The need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments. Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain." SSR 09-4P, 2009 WL 396033, *2. Plaintiff contends that "the ALJ fails to discuss the evidence that [he] required extra support to succeed at school, required extra time to test, quiz or complete assignments secondary to his impairments, lost his job because he performed work tasks to[o] slowly and had objective evidence in the form of extremely lo[w] processing speed scores following the administration of IQ testing. At home, he required reminders to complete his routine chores and was no longer encouraged to cook due to his lack of focus on the items he was preparing." (Docket Entry 28 at 13.) Nevertheless, the ALJ considered this evidence and generally addressed it. (Tr. 115, 113, 116.) The ALJ also acknowledged that Plaintiff had some deficits in this domain. (Tr. 120.) As demonstrated above, the ALJ also pointed to a great deal of additional evidence (including the findings of a consultative examiner who observed Plaintiff take a variety of tests and conclude that he demonstrated the capacity to sustain attention and complete tasks) showing that Plaintiff's limitations were less than marked. Plaintiff has not pointed to evidence compelling a different outcome, nor is the Court persuaded by Plaintiff's argument that the ALJ failed to consider and reconcile the relevant evidence on this issue.

12

video games, prepared simple meals, took out the trash, cleaned his room, and did other chores as needed around the house. (Tr. 163-164, 724, 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599.) Likewise, the non-examining state agency doctors concluded that Plaintiff did not functionally equal listing 112.05B and that he did not have marked limitations in the domain of attending and completing tasks. (Tr. 118, 353-55, 367-69.) Consequently, the Court does not find Plaintiff's challenge to the ALJ's assessment of the domain of attending and completing tasks (Docket Entry 28 at 12) persuasive.

The second domain Plaintiff's contests, moving and manipulating objects, considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. (Tr. 121, 20 C.F.R. § 416.926a.) Here, the ALJ adequately explained why Plaintiff had less than marked limitations in this domain. (Tr. 121-22.) The ALJ noted that Plaintiff has complained of some muscle/joint pain related to his Gaucher's disease (Tr. 572, 581, 655, 665, 1263, 1369, 1444, 1458, 1619), and some physical examinations showing gait abnormality (Tr. 122, 573, 582, 604, 615, 1390, 1392, 1435, 1437, 1602).

Nevertheless, the ALJ reasonably concluded that Plaintiff had less than marked limitations in moving about and manipulating objects because Plaintiff was able to play basketball, play video games, prepare simple meals, clean his room, and take out the trash. (Tr. 122, 724, 163-64, 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599.) Physical therapy records also indicate that he participated in gym class daily for greater than an hour each day, and physical examinations show normal motor strength in the upper and lower extremities. (Tr. 117 "Despite his Gaucher's disease gait issues, . . . he . . . participated in gym class daily for

13

over an hour."), 122, 1433, 1599, 1817.) The ALJ also noted that Plaintiff had no falls despite his balance issues and that he reported that he just had to catch himself sometimes.[7] (Tr. 117, 122, 1433, 1599, 1942.) Beyond this, the non-examining state agency doctors concluded that Plaintiff had less than marked limitations in this domain. (Tr. 118, 353-55, 367-69.) Consequently, the Court does not find persuasive Plaintiff's challenge to the ALJ's assessment of the domain of moving and manipulating objects. (Docket Entry 28 at 17-18.)

**B. Plaintiff did not meet or medically equal listing 12.05B.**

Regarding Plaintiff's adult disability claim, Plaintiff again argues that the ALJ should have found that he had a second marked limitation, in "concentration, persistence, and maintaining pace" because he cannot persist and maintain pace, so as to meet or equal intellectual disorder listing 12.05B. (Docket Entry 28 at 9, 8-11.) This argument lacks merit.

As with listing 112.05B, to satisfy listing 12.05B, Plaintiff must have "[s]ignificantly subaverage general intellectual functioning" and "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B (2)(a)-(d).

_____

[7] In scrutinizing the record, the Court noticed that during the relevant period Plaintiff did report a single fall off his front steps in September of 2020 that gave Plaintiff a headache, soon before Plaintiff turned 18. (Tr. 1953.) Nevertheless, any error here was ultimately harmless in light of the entire record described in this Recommendation. A single fall during the relevant period does not compel a marked or extreme finding in this domain, especially in light of the Plaintiff's other activities discussed in this Recommendation along with the overall medical record. Nor, given the ALJ's overall analysis, is there any reason to believe the ALJ would have reached a different conclusion had she noted one fall during the relevant period of alleged disability.

14

Listing 12.05(B)(1)(b) also requires in the first part that the "significantly subaverage general intellectual functioning evidenced by" . . . "b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of generalized intelligence." *Id.* § 12.05B (1)(b). Listing 12.05B also requires evidence about the claimant's current intellectual and adaptive functioning and about the history of the disorders supporting the conclusion that the disorder began prior to the attainment of age twenty-two. *Id.* § 12.05B (3).

Here, the ALJ specifically referenced listing 12.05 and concluded that Plaintiff had no limitation in his ability to interact with others (Tr. 125); moderate limitations in his understanding, remembering, or applying information (Tr. 125); moderate limitations in concentrating, persisting, or maintaining pace; and marked limitations in his ability to adapt and manage himself (Tr. 125-26). In determining that Plaintiff had only moderate limitations in concentration, persistence, or pace, the ALJ acknowledged Plaintiff's history of ADHD, but noted that during the consultative examination Plaintiff reported not taking his medication for three years and that he had no formal mental health treatment. (Tr. 125, 724.) The consultative examiner noted during her exam that Plaintiff could sustain attention to complete tasks, and Plaintiff also played basketball and video games, could prepare simple meals, and did chores around the house. (Tr. 125, 122, 724, 163-64, 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599.) The ALJ explained that the listing criteria were not met for the same reasons as noted under the childhood listings, specifically listing 112.05 (Tr. 127), which the undersigned has discussed at length above. The ALJ also noted that "the claimant does not have a full-

15

scale IQ score of less than 70 and does not have a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below with significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, of the above areas of mental functioning." (Tr. 127.) The ALJ's conclusion that Plaintiff did not meet or equal listing 12.05B is well-supported and susceptible to judicial review for these reasons and for the same reasons set forth above in assessing listing 112.05B.

### C. Plaintiff's remaining arguments are not persuasive.

In support of his listing arguments,[8] Plaintiff cites different evidence that he contends was not adequately addressed (including accommodations in his IEP, the fact that he allegedly sometimes burnt food he was cooking, his asserted need for prompts to complete household chores, and the results of below average assessments during physical therapy testing) to argue that the ALJ should have found additional marked limitations. (Docket Entry 28 at 10-11, 15-19.) However, there are a number of problems with this objection. First, an ALJ is not obliged to discuss every bit of evidence in the record. *See Reid*, 769 F.3d at 865. Second, the ALJ repeatedly stated that she considered all of the evidence. (Tr. 112 ("After careful consideration of the entire record"), 116 ("After considering the evidence of record"), 117, 128 ("the undersigned has considered all symptoms").) The Court is entitled to rely on these representations absent a compelling reason to the contrary. *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, *6 (W.D.N.C. Nov. 18, 2010) citing *Rappaport v. Sullivan*, 942 F.2d 1320,

---

[8] To the extent Plaintiff later restates these arguments in his brief in an effort to challenge the RFC determination, they are unpersuasive for the reasons set forth above and elsewhere herein.

16

1323 (8th Cir.1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered). Moreover, in addition to considering all of the evidence, the ALJ specially addressed a great deal of it in the course of her decision.[9] (Tr. 112-127.) Plaintiff's argument merely constitutes a request for the Court to reweigh the evidence, contrary to the deferential substantial evidence standard of review. *Craig*, 76 F.3d at 589 (noting that the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner). The Court will not do this.

### D. The ALJ's RFC determination was legally correct and well-supported.

Finally, Plaintiff argues that the ALJ erred in assessing his mental and physical RFC, asserting that the ALJ should have included various additional limitations to account for his time off-task at work; the need for frequent breaks; for balance, hand, and walking related issues; and for deficits in overall motor skills. (Docket Entry 28 at 14-22.) This argument is also without merit.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 416.920; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable

---

[9] For example, the ALJ repeatedly mentioned Plaintiff's IEP (Tr. 114, 115, 116, 118, 119, 125) and physical therapy records (Tr. 117, 122) throughout the decision. *See also supra* n. 5.

impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making a determination. *See Reid*, 769 F.3d at 865. However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Moreover, as the Fourth Circuit Court of Appeals has explained, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citation omitted). For this Court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citation omitted). The ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess about how the ALJ

18

arrived at his conclusions" and cannot meaningfully review them. *Mascio*, 780 F.3d at 637.

Here, the ALJ gave good reasons for concluding that Plaintiff could perform a reduced range of medium work. First, the ALJ noted that Plaintiff's seizures had been very well controlled since February of 2020. (Tr. 129, 1953, 146-48.)

Second, the ALJ acknowledged that Plaintiff had reported that his medication made him both sleepy and also affected his balance. (Tr. 129, Tr. 1963-65.) However, the ALJ accommodated Plaintiff's daytime sleepiness by limiting him to short, simple instructions, and to stay on task for only 2-hour periods, with time off tasks accompanied by normal work breaks.[10] (Tr. 129.) The ALJ also noted that, despite some gait impairment, Plaintiff had no falls,[11] normal strength, and no need for an assistance device for ambulation. (Tr. 129, 666, 190, 558, 604, 615, 656, 800, 1446, 1579, 1776, 723, 1433, 1599, 1942.)

---

[10] Plaintiff contends that the ALJ "fails to analyze" the impact of his seizure medication and his testimony regarding sleepiness and fatigue as a side effect of his seizure medication. (Docket Entry 28 at 11 referencing Tr. 151-152, 164-165, 1946, 1948.) Nevertheless, the ALJ noted Plaintiff's testimony that his medicine "cause[d] him to stay asleep all day" (Tr. 115, 149) and noted that Plaintiff "reported being sleepy during the day with his medication." (Tr. 129.) The ALJ then "limited the claimant to only short, simple instructions and to staying on task for only 2-hour periods over the course of an 8-hour workday, which should cover any possible side effects of medications, and time off task during the workday can be accommodated by normal breaks." (Tr. 129.) The medical evidence to which Plaintiff points (Tr. 1946, 1948) does not support, much less compel, the conclusion that his medication causes him to sleep "all day." In light of this, and the overall record described herein (including Plaintiff's robust activities of daily living), Plaintiff's argument is not persuasive.

[11] As explained earlier, the record did, in fact, mention one fall during the relevant period. *Supra* n.7. However, as further explained earlier, any error is harmless in light of the overall record, including Plaintiff's robust activities of daily living. *Id.* The Court notes too that the ALJ concluded that there were jobs in the economy that Plaintiff could perform even if he were limited to light or sedentary work. (Tr. 131, 168-69.) This bolsters the Court's conclusion that any error in the ALJ's failure to address this single fall in the RFC assessment was harmless.

Third, the ALJ pointed out that that Plaintiff has also been able to play basketball and video games, take out the trash, clean his room, prepare easy meals, go the grocery store with his mother, participate in gym class daily for more than an hour when he was in school, and had held several part-time jobs, including one that lasted between three to five months.[12] (Tr. 129-30, 464, 470, 1433, 1599, 1817, 151, 724, 163-64, 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599, 158.) Fourth, the ALJ noted that Plaintiff's Gaucher's disease was stable with infusion therapy, his asthma was under excellent control with medication, as was his neurogenic bladder and hypertension. (Tr. 129-130, 1954, 1953, 1955, 673-76, 719, 1484, 1487, 1265, 1345, 1945.) Nor had Plaintiff sought any treatment for his ADHD. (Tr. 130, 724, 125.)

Fifth, the ALJ also considered all of the medical opinions of record. (Tr. 130, 118.) The ALJ explained that the only opinion of record rendered since Plaintiff's eighteenth birthday was largely unpersuasive. (Tr. 130.) More specifically, claimant's neurologist Dr. Muhammad Zafar, stated that Plaintiff had two to three seizures per month. (Tr. 130, 1967-68.) Dr. Zafar also concluded that Plaintiff had marked limitations in physical functioning; understanding, remembering or applying information; interacting with others; and concentrating, persistence, and pace. (Tr. 130.) The ALJ explained that this opinion was generally unpersuasive,[13] because it was inconsistent with Dr. Zafar's own treatment notes, Plaintiff's own reporting, and the

---

[12] Plaintiff's efforts at this point to again contend that the ALJ failed to properly discuss and reconcile relevant evidence (Docket Entry 28 at 14) are unpersuasive for the reasons set forth earlier.

[13] Dr. Zafar did conclude that Plaintiff had marked limitations in adapting or managing himself. (Tr. 1967.) The ALJ accepted this limitation and explained that she did so "largely due to the claimant's learning disorder, but otherwise, the undersigned finds no more than moderate mental limitations." (Tr. 130.) As explained herein, a claimant cannot meet a listing requirement with only a single marked limitation.

consultative examiner's conclusion that Plaintiff could understand and follow directions, sustain attention to complete tasks, and show age-appropriate personal skills. (Tr. 130, 1948, 1423, 724, 726.) Dr. Zafar's opinion on these issues was also at odds with Plaintiff's robust activities of daily living, described repeatedly above. (Tr. 130.)

Plaintiff's arguments to the contrary are not persuasive. Plaintiff challenges the ALJ's RFC determination, mentioning his seizure medication side-effects, the need for extra time at school to complete timed schoolwork, needing reminders to complete tasks at home, and the loss of previous part time jobs due to inability to keep up with the pace of work. (Docket Entry 28 at 14.) However, as noted in the previous paragraph, the ALJ supported the RFC finding in light of Plaintiff's ability to complete a wide array of activities of daily living, including completing chores, sustaining attention and to play video games and basketball, and the consultative examiner's finding that Plaintiff was able to sustain attention to complete tasks. (Tr. 129-30, 464, 470, 1433, 1599, 1817, 151-53, 724, 163-64, 354, 600, 604, 611, 691, 1166, 1339, 1472, 1599), 158.) The ALJ also pointed to Plaintiff's own testimony and other evidence that he was still able to perform various activities, had no ADHD treatment, and had no formal mental health treatment. (*Id.*) Nor did the record contain evidence of repeated falling; instead, the evidence showed controlled seizures, normal motor strength, and no need for an assistive device. (Tr. 129, 666, 190, 558, 604, 615, 656, 1446, 1579, 1776, 723, 1433, 1599, 1942.)

21

As to Plaintiff's allegations of hand weakness, he cites only to needing breaks during the consultative examination because his hands were tired. (Docket Entry 28 at 16-18.)[14] More specifically, in August of 2019, the consultative examiner noted that he had below average motor skills and that his hands became tired, and he frequently took breaks during their assessment. (Tr. 724, 726.) Nevertheless, the longitudinal medical record does not support, much less compel, any issue with Plaintiff's hands that causes work-related functional limitations. There is nothing in his medical records about issues with Plaintiff's hands other than advanced bone age in 2016 imaging. (Tr. 1164.) He had no pain in his hands or wrists. (Tr. 694, 1475.) He had full range of motion. (Tr. 262, 274.)

In the end, as illustrated throughout this Recommendation, the ALJ sufficiently discussed her consideration of the evidence, reconciled conflicting evidence, and adequately built a logical bridge from the evidence to her conclusion regarding the extent to which Plaintiff's impairments impacted his ability to engage in substantial gainful activity in a manner that can be meaningfully reviewed. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). In the end, Plaintiff's objections have no merit, the ALJ's decision is legally correct, supported by substantial evidence, and susceptible to judicial review.

---

[14] Plaintiff cites the need to be expected to have fine motor skills needed to write efficiently as an adolescent. (Docket Entry 28 at 17.) However, a review of the record reflects this was not an issue. In third grade, records reflect "[h]e has excellent handwriting and gave us an example of his cursive handwriting today in clinic" (Tr. 898), and in fifth grade there was no request for a motor skills evaluation (fine and gross motor skills) (Tr. 1843; *see also* Tr. 1841, 1942.) Plaintiff also faults the ALJ for not addressing in her decision certain evidence about Plaintiff's below average motor proficiency/coordination. (Docket Entry 28 at 15-17.) Nevertheless, the ALJ specifically noted Plaintiff's below average motor skills. (Tr. 116.)

22

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, susceptible to judicial review, and supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 27) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 29) be **GRANTED**, and the final decision of the Commissioner be upheld.


                                          _____/s/  Joe L. Webster_____
                                          United States Magistrate Judge

January 30, 2023
Durham, North Carolina